People of the State of Illinois, Plaintiff-Appellee, v. Edward Nelson, Defendant-Appellant.

Gen. No. 10,868.

Fourth District.

September 28, 1967.

Rehearing denied December 4, 1967.

J. Waldo Ackerman, of Springfield, for appellant.

Raymond L. Terrell, State's Attorney of Sangamon County, of Springfield (Richard A. Hollis, First Assistant State's Attorney, of counsel), for appellee.

CRAVEN, P. J.
The defendant was tried by a jury for the offense of armed robbery. Upon a finding of guilty, he was sentenced for a term of not less than four nor more than

ten years in the Illinois State Penitentiary. This appeal is to review the trial and the sentence.

It is here urged that the sentence is excessive, that error intervened in the trial of the case when the circuit court refused to discharge the public defender as requested by the defendant and to permit the defendant to represent himself. Further, it is urged that the jury deliberations were tainted with error since the jury considered matters not of record in arriving at its verdict. The errors urged will be considered in reverse order.

The trial of this case was concluded on May 26, 1965, and the jury returned its verdict on that date. A motion for a new trial was filed on June 3, 1965, and arguments thereon were heard July 1, 1965. The public defender, as counsel for the defendant, filed an affidavit on July 1, 1965, and in this affidavit stated that on the day the jury returned its verdict one of the jurors called him requesting information regarding the interpretation of the term "dangerous weapon" and in the course of that telephone conversation the unidentified juror made further observations concerning the jury deliberations. This juror related that one of the jurors stated he was a deputy sheriff and that this same juror stated that he had read about the defendant, that he was no good, and that the defendant was charged with a narcotic violation, and that anyone who had anything to do with narcotics belonged in jail. Other observations related to whether or not the jury intended to obey the instructions given in this case.

The material set forth in this affidavit raises grave questions as to this trial. The matter, however, was not urged in the trial court either at the time of the occurrence, at the time of the filing of the post-trial motion or at any time. The issue of jury misconduct must initially be passed upon by the trial court. People v. Phelps, 388 Ill 618, 58 NE2d 615 (1945). Having failed to urge this question in the trial court either at the time of

the alleged misconduct or in the motion for a new trial, the issue is waived by the defendant. People v. Irwin, 32 Ill2d 441, 207 NE2d 76 (1965); People v. Fleming, 54 Ill App2d 457, 203 NE2d 716 (1st Dist 1965).

It is next urged that the defendant was entitled to represent himself and the refusal of the trial court to discharge the public defender at his request was error. The authority for this proposition cited to us is the general rule contained in 23 CJS, Criminal Law, § 979(4). The record in this case indicated that as the trial was well in progress the public defender advised the court that the defendant wished to release the public defender of the duty of representing him. Inquiry by the court of the defendant confirmed the request. The court denied the defendant's request to remove his attorney and ordered that the trial proceed. The attorney thereafter indicated that he was proceeding not at the desire or request of the defendant but at the direction of the court. The cause continued thereafter with the public defender representing the defendant and fully participating in the proceedings. The motion for a new trial did urge that the court committed error in refusing to allow the defendant to dismiss his counsel and represent himself.

It is, of course, well-settled that an accused has the right to have counsel act for him or has the right to act for himself. He must elect between these alternatives but it does not follow that a defendant in a criminal proceeding may attempt to exercise the right to counsel or the right of self-representation to thwart the administration of justice. See People v. Ephraim, 411 Ill 118, 103 NE 2d 363 (1952). As stated in People v. Bright, 78 Ill App2d 2, 223 NE2d 215, 220 (1st Dist 1966):

> "It has been held that the right of a criminal defendant to represent himself also derives from the Federal Constitution, and that the right of a defendant in a criminal case to act as his own lawyer is

unqualified, if invoked prior to the start of the trial (United States ex rel. Maldonado v. Denno, 348 F2d 12, 15 (2nd Cir, 1965)). Once the trial begins, however, a defendant no longer has an unqualified right to discharge his attorney and represent himself. United States ex rel. Robinson v. Fay, 348 F2d 705, 707 (2nd Cir, 1965); United States v. Bentvena, 319 F2d 916, 938 (2nd Cir, 1963), cert den, Ormento v. United States, 375 US 940, 84 S Ct 345, 11 L Ed2d 271; United States ex rel. Hyde v. McMann, 2nd Cir, 263 F2d 940, in which the court stated at page 943:

" '. . . The right to discharge counsel after the trial has begun is a qualified one and to support a reversal of a conviction because the trial judge denied a motion to discharge counsel there must be a showing that defendant was prejudiced by the denial.' "

█ In this case, we find no indication whatsoever that the defendant was prejudiced when the court, as a matter of discretion, denied the motion to discharge the public defender and allow the defendant to proceed by representing himself.

Finally, it is contended that the sentence is excessive. The defendant, in his brief, makes the assertion of the excessiveness of sentence but does not state in what respect he deems the sentence to be unwarranted. The brief asserts that there was no hearing in aggravation and mitigation and suggests that under the authority of People v. Harden, 78 Ill App2d 431, 222 NE2d 693 (4th Dist 1967), the sentence was imposed without adequate information and therefore not such as can be sustained on appeal.

█ The People assert that a hearing in mitigation and aggravation was conducted and further suggest that the sentence is within the limits prescribed by the legislature, and not a substantial departure from the fundamental law, and therefore apparently not deemed exces-

163

sive. First, it begs the question to suggest that a sentence that is within the limits prescribed by law is ipso facto not subject to reduction on review. The grant of authority to the appellate courts and the Supreme Court to reduce the punishment imposed by the trial court is, of course, relatively new. This authority clearly is not limited to those instances where the sentence imposed exceeds that authorized by law, for to so hold would be to judicially repeal the grant of authority by the legislation.

▇ Reviewing courts have been admonished to apply the new grant of authority with considerable caution and circumspection, the assigned reason being that the trial judge ordinarily has superior opportunity by reason of hearing the testimony in the trial and the information given in aggravation and mitigation to make a sound determination concerning the sentence that is to be imposed. People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965).

In this case, the hearing in aggravation is, at best, minimal. A deputy sheriff testified that while an inmate of the county jail the defendant was disrespectful to deputy sheriffs and used obscene language. This testimony constitutes the hearing in aggravation and mitigation. The assistant state's attorney sought to offer evidence of a crime for which the defendant had been indicted. The indictment was still pending. Objections to this offer were sustained. The only other matter submitted was a statement that the defendant had been convicted in 1962 for second degree burglary and sentenced to a term of two years in Missouri.

The defendant testified in his own behalf during the course of the trial and from that testimony it can be ascertained that he was then 24 years of age, that he was a photographer by occupation, that his legal address was Chicago, Illinois, and that he had lived in St. Louis,

164

Missouri, together with the evidence received on the substantive nature of the offense.

■ The legislature has said that it is the general purpose of the criminal law to prevent arbitrary or oppressive treatment of persons convicted of offenses and to provide penalties which are proportionate to the offense and which permit of recognition of differences in the rehabilitation potential of individual offenders. (Ill Rev Stats 1965, c 38, § 1–2(c), (d).) In this case, the conviction for the offense carries a statutory penalty of imprisonment in the penitentiary for an indeterminate term with a minimum of not less than one year. (Ill Rev Stats 1965, c 38, § 18–2(b).) In order to give effect to the legislative mandate as to sentencing, the sentencing judge clearly would want the maximum of information of the nature described in section 1–7(g) of chapter 38, Ill Rev Stats, 1965. That provision is discussed in People v. Evrard, 55 Ill App2d 270, 204 NE2d 777 (5th Dist 1965).

■ Appellate review of sentence must be predicated upon a legislative realization that there is disparity in sentencing and appellate review is to correct disparate sentences which clearly mitigate against rehabilitation.

While the sentencing judge is in a position to personally view witnesses who appear, that which goes into his judgment in arriving at the sentence must necessarily be in the record if this court is to intelligently exercise its responsibility in the review of sentence. In this case, the record does not show the education, the family situation, the background or, to any appreciable extent, the employment record of the defendant. Observing his demeanor as a witness cannot supply this missing information.

In 55 Ill BJ 300 (1966), the question is raised as to whether appellate review of sentences is a reality or an illusion under the new legislative grant of power. The cases relating to the new authority are there collected and

discussed. An observation of similar import discusses the sentence review statute in the State of Iowa. Rubin, The Law of Criminal Correction, 149 (1963); see also 1966 Ill LF 538.

■ The sentence in this case of not less than four nor more than ten years in the Illinois State Penitentiary is asserted to be excessive. If the sentence was arrived at in recognition of the differences in rehabilitation potential, the record does not so indicate. A sentence of four to ten years effectively means incarceration for at least three years and two months prior to parole eligibility and may, depending upon the action of the Parole and Pardon Board, mean incarceration for six years and eight months if the defendant is not paroled but receives his credit for good time. It is an awesome responsibility for the sentencing judge to attempt to predict the future conduct of any defendant. The sentence, if it contemplates the rehabilitation of the defendant and the protection of the society, is such a prediction. It should be based upon the fullest possible information relevant to the defendant and that information should be incorporated in the record in case of subsequent review of sentence. This record being deficient in this respect, the sentence is vacated and the cause is remanded to the circuit court of Sangamon County for further proceedings consistent with the views herein expressed.

Judgment of conviction affirmed. Sentence vacated and cause remanded.

SMITH and TRAPP, JJ., concur.