THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD PRINCE, Defendant,Appellant.

(No. 70-143; ■■■■■■

Fifth District—October 22, 1971.

854

Paul Bradley, of Defender Project, of Mount Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the circuit court of St. Clair County Ronald Prince was convicted of armed robbery and sentenced to the penitentiary for not less than 15 nor more than 45 years. On this appeal he contends that he was not proven guilty beyond a reasonable doubt; that the trial court erred in admitting certain testimony and in allowing unsworn testimony by the State's Attorney. He also contends that his sentence was excessive and asks that it be reduced.

The crime occurred on December 30, 1068, about 2:15 P.M. in the Archway Tavern in East St. Louis. John Coates, manager of the tavern, testified that he was talking to Fred Halwachs, a liquor salesman, when three men and a girl entered the tavern. One of the men, whom he identified as defendant, asked him where the rest room was and when he returned he pulled a gun and announced that it was a stick-up. Each of the other men also had a gun and the girl carried a paper bag. He stated the defendant did all the talking, demanded and took $80 or $90 from him, and a wrist watch and brief case from Mr. Halwachs. The robbery took about ten minutes and when the robbers left he immediately called the police. On cross-examination Mr. Coates stated that he could not remember how defendant was dressed, and in answer to a question as to whether defendant was wearing a mustache he stated that he believed he was but he could not now be certain. He stated further that he identified defendant in a police line-up but that his in-court identification was based on his view of defendant at the time of the robbery and that he was positive of his identification.

Mr. Halwachs testified that his first knowledge of the robbery was when someone stuck a gun in his ribs, that he did not see the gunman

face-on and could not identify the defendant, that he was ordered to put his wrist watch into a paper bag held by the girl and then the gunman went through his pockets and took his wallet in which he had over $400. His brief case and pen case were also taken, and these, together with his wallet, were identified by him and admitted into evidence at the trial. In addition, he described two identification cards from the Illinois Police Association and the St. Clair County Peace Officers which were in his wallet but which were not offered in evidence for reasons which will appear later herein.

A St. Louis police officer testified that he arrested the defendant and another man about 25 minutes after the robbery. He had no knowledge of the robbery but while parked at a stop light he saw a car pass through the intersection, checked his "hot sheet", decided it might be stolen, and pursued it. In an effort to elude him the car drove into an alley and three men jumped out and ran. The officer continued his pursuit and about four blocks away he recognized two of them walking and arrested them. At the trial the officer identified the defendant as the driver of the car and testified that the brief case and pen case, identified by Halwachs as belonging to him, were found on the seat of the car and the two identification cards with Halwachs' name on them were removed from the person of the other man in the search made at the time of the arrest.

The defendant did not testify and offered no evidence in his own behalf. In fact he failed to appear on the last day of his trial and it was not until approximately five months later that he was reapprehended and sentenced.

■■■ Defendant's contention that he was not proven guilty beyond a reasonable doubt is based in part on a number of alleged discrepancies in the testimony of the witnesses. He points out that Halwachs could not identify defendant whereas Coates was positive in his identification. But this is understandable for the defendant talked directly to Coates and Halwachs was looking straight ahead with a gun in his ribs and did not see the robber. Defendant cites as incredible the fact that Coates could not remember how the robber was dressed or whether he wore a mustache, and as equally incredible the fact that the arresting officer, with only a brief glance from his squad car, was able to observe the yellow beany type cap, black leather coat, and yellow shirt which defendant was wearing at the time of his arrest. We cannot agree that the testimony of either witness was incredible. It occurs to us, as it probably did to the jury, that the observations of the officer were made by one trained in the field of investigations, who, at the time, was performing an act of efficient police work, whereas Coates, a layman, was under the stress of facing three guns in the hands of three unpredictable men. Furthermore,

there was no evidence as to how defendant was dressed at the actual time of the robbery, nor was there any evidence as to whether he wore a mustache either at the time of the robbery or at the time of his arrest. These points, and others raised by defendant but not specifically discussed herein, are directed solely to the weight of the evidence and the credibility of the witnesses and, as such, are within the province of the jury to determine and not this court to review. A jury's verdict should be set aside when the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Peto*, 38 Ill.2d 45.) Such is not the case here. To the contrary, we find the verdict of the jury justified.

■■■ Next, defendant contends that some relevance should be attached to the fact that no one of the nine or ten customers sitting at the bar was called as a witness. This was brought out at the trial and a police witness testified that they had declined to testify because they did not want to get involved. In any event, it has been often held that the testimony of a single witness, if it is positive and the witness is credible, is sufficient to support a conviction. (*People v. Tribbett*, 41 Ill.2d 267.) Here we find the identification of a defendant was sufficient, for not only was there a positive identification by a credible witness but his testimony was corroborated by the discovery of some of the fruits of the robbery in the car driven by defendant and on the person of a passenger in the car shortly after the robbery.

■■■ Defendant contends further that it was error to allow Halwachs to describe the two identification cards contained in his wallet and to allow other witnesses to describe the cards which were taken from the companion of defendant at the time of his arrest. It is also argued that the court improperly permitted the State's Attorney to explain in an unsworn statement that the cards had been misplaced on the morning of the trial and were unavailable to be examined and offered in evidence. He contends that the admission of testimony that the victim's name was on the cards is a violation of the best evidence rule, citing *People v. Wells*, 380 Ill. 347. This was a forgery case in which the court refused to allow the introduction of facsimile reproductions of allegedly forged checks without introducing preliminary proof accounting for the originals and laying the foundation for secondary evidence. Such rule is inapplicable here. The obvious purpose of the best evidence rule is the prevention of fraud, requiring that the document in issue be produced in its original form, or, if proven to be unavailable, that its substitute be a true and correct reproduction. Under an indictment for robbery it is not necessary to prove the particular identity of the property taken, further than to show it was the property of the victim. (*People v. Craig*, 75 Ill.App.2d 29.) It has also been held in a narcotics case that the best

evidence rule was obviously inapplicable where testimony was admitted as to the presence of empty capsules in the defendant's apartment over the objection that "the best evidence of the capsules are the capsules." (*People v. Brengettsy*, 25 Ill.2d 228.) Here the cards, one of the fruits of the robbery, were adequately described by the victim and identified as the same cards by the officer who eventually recovered them at the time of the arrest. Admittedly it was irregular to permit the State's Attorney to explain the absence of the cards in an unsworn statement, but such fact could not reasonably have affected the resultant guilty verdict and, there being no evidence to indicate anything other than defendant's guilt, we find such error harmless. See *People v. Bridges*, 28 Ill.2d 165 and *People v. Berry*, 18 Ill.2d 453.

■■■■ Finally, defendant contends that his sentence was excessive, arguing that since the record shows no evidence presented in aggravation the sentence was too severe on its face. The State answers this argument by stating that there actually was a hearing in *mitigation at* which hearing defendant admitted his prior record making it unnecessary to present evidence in aggravation. We agree with defendant that this volunteered information does not appear in the record and is not before us. However, neither is there anything in the record showing any mitigating circumstances which would justify a reduction in sentence and the burden is on the defendant to present such facts. (*People v. Nelson*, 41 Ill.2d 364; *People v. Russo*, 119 Ill.App.2d 237.) The sentence imposed by the trial court was within the limits prescribed by the legislature for the crime charged (Ill. Rev. Stat. 1969, ch. 38, par. 19—1), and to reduce it without a showing of mitigating circumstances would be arbitrary and in contravention of the principle that our authority to do so should be exercised only with considerable caution and circumspection. (*People v. Taylor*, 33 Ill.2d 417.) Under the circumstances we decline to take such action.

We find that the defendant received a fair trial free from prejudicial error and the judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER, P. J. and JONES, J., concur.