THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN FRANK LAIRSON, Defendant-Appellant.

(No. 68-16; ▮▮▮▮▮▮)

Third District—February 4, 1971.

Theodore Gottfried, of Defender Project, of Ottawa, for appellant.

Robert E. Richardson, State's Attorney, of Ottawa, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant John Frank Lairson was convicted of armed robbery in a jury trial in the Circut Court of La Salle County and was thereafter sentenced to the Illinois State Penitentiary for a term of not less than 20 nor more than 40 years. It was directed that this sentence be consecutive to a 20-year sentence which defendant was serving at Leavenworth for armed robbery of a bank.

Defendant was indicted on two counts of armed robbery occurring on different dates, one for taking $897.55 from the presence of Lawrence Drager at a Kroger Store and the other for taking $890 from the presence of Vincent Haas at a National Food Store. Both of said stores are located in Streator, Illinois. On his arraignment on May 20, 1966, defendant appeared with a private attorney and made bond. When defendant failed to appear on June 29, 1966, his bond was forfeited. The record indicates that defendant was arrested on December 1, 1966, for a bank robbery in Oklahoma and, on April 4, 1967, he was sentenced to 20 years in Leavenworth for a federal bank robbery.

On March 29, 1967, defendant filed a written demand for an immediate trial upon the State's Attorney of La Salle County, Illinois. This caused the 120-day period, within which defendant must be brought to trial in Illinois, to begin to run on March 30, 1967 (Illinois Revised Statutes, ch. 38 par. 103–5(a)). The attorney who filed such demand appeared only for such purpose. On June 7, 1967, a petition and order for writ of *Habeas Corpus Ad Prosequendum* was filed and defendant's trial was set for June 19, 1967, in La Salle County. Defendant was brought from the federal prison to La Salle County where he appeared in court on June 23, 1967, with a private attorney. This was on a Friday and the trial court stated that the trial would be held on the following Monday, June 26, 1967. At this time, defendant stated that he desired that his private attorney be permitted to withdraw and that the Public Defender be appointed to represent him. The court instructed defendant's private attorney to work with the Public Defender until the trial on Monday.

On the following Monday, June 26, 1967, all of the parties were back in court. Defendant told the judge that the Public Defender asked him if he would plead guilty and that defendant did not feel that the Public Defender wanted to try his case. The judge then stated that defendant would be required to go to trial on that day or move for a continuance which would stop the 120-day period from running. Defendant stated he wished to keep the 120-day period going. The court then told defendant that the trial was set to begin on that day and he would be required to

retain the Public Defender to represent him. Defendant then made some request for witnesses and for a certain issue of the Streator newspaper and the judge granted these requests. Defendant then stated that he released his private attorney at that time. He also repeated again that he did not want the Public Defender to defend him. The court told him that if he wished to hire other counsel at this later date he would have to move for a continuance and stop the 120-day period from running. Defendant refused to do so. The court made it clear again that defendant could not demand an immediate trial and at the same time discharge all of his attorneys. The defendant again stated that he did not want to stop the running of the 120 days. The trial then proceeded on Count I which involved the armed robbery of the Kroger Store.

While none of the evidence taken at the trial appears in the designation of record, it is apparent that the witnesses to the robbery picked out defendant's picture from 15 to 20 photographs shown them on April 7, 1966. Defendant's picture then appeared in the Streator newspaper the day before he was arrested. Defendant was then picked out of a line-up on April 8, 1966, and at such line-up he had no attorney present. At the trial, five witnesses identified the defendant as the one who committed the Kroger Store robbery and his fingerprint was matched with a print left on a canned ham which was carried by the robber. The jury found the defendant guilty.

A hearing in aggravation and mitigation was held and the record of defendant's conviction and 20-year sentence for the $77,606.23 robbery of a Tulsa, Oklahoma bank was introduced. The record of a 1957 conviction of larceny of a motor vehicle in Illinois with a 2 to 8 year sentence was also introduced, as well as the record of a conviction for a jail escape in 1962. The State also offered a copy of defendant's criminal record compiled by the Illinois Bureau of Investigation and the FBI which showed many arrests and charges where there was no conviction. The only thing offered in mitigation was a short statement by the Public Defender that the defendant was told when he was first arraigned that if he would plead guilty whatever sentence was recommended would run concurrently with the federal sentence, and that the defendant should not be punished for requesting a jury trial by having his sentence begin to run after the federal sentence. The Public Defender also stated that the charges, upon which defendant was arrested but not tried, should not be part of the record of the aggravation and mitigation hearing. The trial court thereafter sentenced defendant to not less than 20 years nor more than 40 years in the Illinois State Penitentiary with the sentence to commence upon defendant's release from Leavenworth.

■■ The first issue to consider is whether the trial court was in error

in refusing defendant's request that an attorney other than the Public Defender be appointed to represent him on the record in this case. The applicable statute in the cause before us (ch. 34, Illinois Revised Statutes, par. 5604) provides that the court shall appoint counsel for indigent defendants, and shall appoint counsel other than the Public Defender for a defendant who demands other counsel *and* shows good cause for such appointment. In the instant case, defendant did not show good cause why the Public Defender should not represent him. He merely stated that the Public Defender asked him if he would plead guilty and that defendant did not feel the Public Defender had a desire to try the case. This is not sufficient good cause. As stated in *People v. Cox*, 22 Ill.2d 534, at 537, the act does not give the defendant the right to make a choice of court-appointed counsel. The entire argument of defendant relating to fundamental fairness is based on the theory that the judge could have appointed another attorney for defendant and given him additional time to prepare the case. That argument ignores the fact that defendant had filed the 120-day notice demand and that the time was about to run out, as there would be no jury available in July. The court in fact offered to grant defendant a continuance to obtain other counsel if defendant would request such continuance. Defendant refused, however, and insisted that he did not want to stop the running of the 120 days. The trial court made it quite clear to defendant that he could not continue in his demand for an immediate trial and at the same time discharge all of his lawyers and seek time to get additional representation.

The cause before us is similar to *People v. O'Connell*, 84 Ill.App.2d 184, where a defendant had requested appointment of counsel other than the Public Defender and had also made the 120-day demand. In that case the court pointed out that where a continuance of the case for the purpose of again appointing new counsel for defendant makes it apparent to the court that the trial would commence after the 120-day period (which would result in defendant's discharge without a trial), the court had no alternative but to inform defendant that he would appoint other counsel only if defendant requested a continuance for that purpose.

■■  There was also no showing that the Public Defender was incompetent or negligent in the cause before us. Defendant had requested and accepted the Public Defender as his attorney on Friday and when the trial came up on Monday he stated he wished other counsel. There was no abuse of discretion by the trial judge in the cause before us in refusing to appoint a different attorney for defendant when defendant refused to request a continuance in order to give the trial judge an opportunity to even consider the appointment of other counsel for him. Defendant could not wait until the morning of the trial in an effort to make it impossible for his

cause to be prosecuted under the circumstances present in the case before us. As stated in *People v. Demary*, 37 Ill.2d 364, defendant had no constitutional right to an attorney other than the Public Defender and his request for other counsel made on the day of the trial was properly denied when there was no showing that the Public Defender was incompetent. In fact, defendant does not even raise the issue of competence of the Public Defender in this case.

■■ Another issue for consideration in this case arises from the fact that defendant did not have an attorney present when defendant was in a lineup. Defendant cites *People v. Wade*, 388 U.S. 218 and *Gilbert v. California*, 388 U.S. 263, as a basis for saying that he was denied due process by reason of the failure to have an attorney present at the line-up. The two cases referred to are applicable only to lineups occurring after June 12, 1967 (*Stoval v. Denno*, 388 U.S. 293). The lineup in the cause before us was on April 8, 1966.

■■ Defendant also contends that he was not proven guilty beyond a reasonable doubt. While the designation of record does not include the testimony at the trial, it appears clearly that defendant was identified in court by five witnesses who saw him commit the robbery in the Kroger Store and there was evidence of a fingerprint on a canned ham which matched defendant's print. The only evidence offered by defendant appears to be his own alibi testimony that he was not in Streator on the day of the crime. There was ample evidence in the record to support the conviction.

■■ A supplemental issue was whether defendant was prejudiced by the admission of the FBI record at the hearing in aggravation and mitigation. Three authenticated records of prior convictions were admitted and considered by the trial judge. They included larceny of a motor vehicle, escape, and the Oklahoma bank robbery. The FBI report was also offered containing notations of arrests where there was no conviction. There was no showing of any basis asserted for objection to such record at the time of the hearing. While we have frequently stated that it is improper for a trial judge to consider matters not relating to conviction, we believe that the rule announced in *People v. Riley*, 376 Ill. 364, where improper evidences of problems with the law were considered at the hearing in aggravation, the court emphasized that while a record is not completely free from error, the purpose of a reviewing court is not to determine whether the record is perfect, but its purpose is to determine whether defendant has had a fair trial under the law and whether his conviction was based on evidence establishing his guilt beyond all reasonable doubt. Where it can be said from the record that an error complained of could not reasonably have affected the result of the trial, the judgment of the trial court should be affirmed. With the evidence of the three prior convictions before him,

it is clear that the FBI report could not have improperly influenced the trial judge. There is no evidence in the record that the trial court relied on improper evidence in determining what the sentence should be in the cause before us.

■■ In the instant case, defendant's sentence of from 20 to 40 years is to be served following service of the federal sentence for bank robbery. The issue before us is whether defendant's sentence was so designed to run consecutively rather than concurrently because defendant demanded a trial instead of pleading guilty. There is nothing in the record which shows that defendant was promised a concurrent sentence if he would plead guilty. The only reference to such matter comes from a statement by the Public Defender at the aggravation and mitigation hearing. On the basis of the record we do not believe there is any basis established for setting aside or modifying the verdict on the premise that defendant was sentenced to a more severe sentence by reason of the fact that he demanded a jury trial. This case may be considered as coming within the scope of *People v. Myers,* 44 Ill.2d 327, at 331, where the court held that the fact that State's Attorney might have indicated he would suggest a shorter sentence on a guilty plea, did not amount to a deprival of due process of law when defendant demanded a trial and the State's Attorney recommended a more severe penalty.

■■ The last issue for consideration is whether the sentence should be modified in this cause. Defendant offered no evidence in mitigation. His record of three prior convictions including a conviction for a $77,000 bank robbery in Oklahoma is shown in the record. As noted by the court in *People v. Nicholls,* 44 Ill.2d 533, 540, the power vested in this court to reduce sentences should be exercised with caution. This is especially true in situations such as in the cause before us where the only contention that defendant raises on appeal as ground for reducing his sentence is that the sentence was excessive (*People v. Alexander,* 121 Ill.App.2d 347). Accordingly, we do not believe we would be justified in modifying the sentence in this case.

Since we find no reversible error in the record, the judgment of the Circuit Court of La Salle County will be affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.